[No. A032551. First Dist., Div. Two. Sept. 18, 1987.]

MICHAEL RUTTENBERG, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Michael Ruttenberg, in pro. per., for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Mary C. Michel and Lawrence J. Gumbiner, Deputy Attorneys General, for Defendant and Appellant.

OPINION

BENSON, J.—Appellant Department of Motor Vehicles (DMV) appeals from a judgment of the superior court granting respondent's petition for writ of mandate ordering the DMV to set aside its order of suspension and to reinstate respondent's driving privilege as if no suspension had ever occurred. We reverse the judgment.

I

Factual Background

On March 8, 1984, respondent Michael Ruttenberg, owner and operator of a motor vehicle, was involved in a two-car collision in the City of San Diego. No injuries or fatalities were suffered in the accident and the other driver was cited for failure to yield the right of way to respondent. Respondent, however, was cited at the scene for failure to maintain financial responsibility pursuant to Vehicle Code section 16020 which requires that

"Every driver of, and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021."[1]

At the time of the accident, respondent, a licensed physician, had recently returned from a six-month stay in the People's Republic of China where he had been studying traditional medicine. During that period of time, respondent stored his vehicles and let his insurance coverage lapse. Respondent neglected to reactivate the insurance coverage on his return to San Diego and had been driving without insurance for approximately one week when the accident occurred. Respondent reactivated his insurance coverage the day after the accident and has maintained continuous coverage ever since.

On June 15, 1984, respondent was notified by the DMV that his driving privilege was to be suspended effective June 9, 1984, due to his failure to comply with the California financial reponsibility law. The financial responsibility law (§§ 16000-16075) provides that whenever a driver involved in an accident resulting in damage to the property of any one person in excess of $500, or bodily injury or death, fails to prove the existence of "financial responsibility" at the time of the accident, the DMV shall suspend that driver's license. (§§ 16070, subd. (a); 16000.)

The suspension was to last for one year from the date of the accident. (§ 16072.) The suspension was stayed, however, pending a formal hearing on the matter requested by respondent. The hearing was held on March 11, 1985.

At the DMV hearing, respondent admitted that he had been involved in the accident and that he had at that time allowed his insurance coverage to lapse. Respondent argued that his failure to reactivate coverage of his vehicle had been an oversight and that he had nevertheless been financially responsible within the meaning of the statute. Respondent then presented evidence of his financial resources showing that he had maintained funds in excess of $250,000 on deposit in certificates of deposit with Home Federal Savings and Loan Association. Respondent reasoned that his financial resources would have been sufficient to allow him to respond in damages in the event of liability.

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

Following respondent's testimony, the hearing officer stated: "The only question I have is what was the actual damage amount to your vehicle . . . ." In response, respondent stated: ". . . I would have to estimate, in the order, $1,000." Among the various documents placed into evidence at the hearing by the DMV was the accident report filed by respondent. In this report, respondent had estimated the damage to his vehicle as $1,400.

The DMV notified respondent on April 5, 1985, that it had found the suspension to be proper under section 16070, subdivision (a). This section provides: "Whenever a driver involved in an accident described in Section 16000 fails to prove the existence of financial responsibility as required by Section 16020 at the time of the accident, the department shall pursuant to subdivision (b) suspend the privilege of the driver or owner to drive a motor vehicle, including the driving privilege of a nonresident in this state." Section 16000 requires the reporting of every ". . . accident originating from the operation of a motor vehicle on any street or highway which accident has resulted in damage to the property of any one person in excess of five hundred dollars ($500) or in bodily injury or in the death of any person . . . ."

Respondent's suspension was upheld on the grounds that: 1) the accident resulted in property damage in excess of $500; and that 2) respondent had not established that financial responsibility was in effect at the time of the accident. Respondent, however, never actually lost the privilege to drive. Because the suspension of respondent's privilege had been stayed pending the hearing, it had in effect terminated by its own terms prior to the DMV's formal finding as to its propriety.

After reinstatement of his driving privilege, respondent's insurance carrier informed him that as a result of the suspension he would automatically lose his "safe driver" preferred rate and be placed in the "assigned risk" classification at a greatly increased insurance premium.

Respondent then petitioned the superior court for a writ of mandate ordering the DMV to set aside the suspension and to reinstate respondent's driving privilege as if no suspension had ever occurred. At the hearing on the petition, respondent argued that: 1) there was insufficient evidence and improper findings with respect to the threshold amount of property damage; and that 2) respondent had been, in any event, a financially responsible driver, within the meaning of the statute, due to his substantial financial resources.

During the hearing on the petition, the trial court expressed the opinion that the DMV "should" develop some procedures whereby an individual who "inadvertently" failed to maintain proof of financial responsibility could retroactively make such a showing and thus avoid license suspension. The judgment granting the writ, filed on July 22, 1985, orders the DMV "to permanently set aside its Order of Suspension dated April 5, 1985 . . . and to reinstate [respondent's] driving privilege as if no suspension had ever occurred."

## II

## Discussion

■ On appeal, respondent has failed to file a reply brief in this matter and thus rule 17(b) of the California Rules of Court is applicable. This rule provides, in pertinent part, that: ". . . the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief." Thus, respondent's failure to file an appellate brief does not mandate automatic reversal. It is therefore proper in this case for the appellate court to examine the record and reverse only if prejudicial error is found. (*In re Marriage of Bukaty* (1986) 180 Cal.App.3d 143, 147 [225 Cal.Rptr. 492]; *In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [192 Cal.Rptr. 212].)

■ At the hearing on the petition, respondent asserted that the DMV's decision to suspend his license was not supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subd. (c).) Respondent's argument is without merit. The evidence presented at the DMV hearing shows that the damage to respondent's vehicle was in excess of $500. That evidence has not been contradicted. ■ Where the decisive facts before an administrative body are uncontradicted, it is reversible error for the trial court to set aside the administrative findings as unsupported by the evidence. (*David Kikkert & Associates, Inc.* v. *Shine* (1970) 6 Cal.App.3d 112, 116 [86 Cal.Rptr. 161].) ■ The determination of the effect of uncontradicted facts is a question of law and the findings and conclusions of the trial court, regardless of the scope of its review, are not controlling on appeal. (*Ibid.*)

The function of an appellate court in a case such as this is to determine the proper legal characterization of the pertinent, uncontradicted facts. (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].) Thus, an appellate court will

reverse the trial court's judgment where it operates to set aside an administrative decision or order which is supported by uncontradicted facts as shown by uncontradicted evidence. (*David Kikkert & Associates, Inc.* v. *Shine, supra,* 6 Cal.App.3d 112.)

In respondent's accident report he initially estimated the damage to his vehicle in the amount of $1,400. At the later DMV hearing, respondent revised his estimate as in the order of $1,000. Respondent contended below that these estimates are insufficient evidence to establish the threshold amount of damages. Respondent reasons that because he has had no training in determining the cost of auto body and fender work, his estimates are not reliable indicators of the actual amount of damage.

The record shows, however, that respondent has had ample opportunity since the date of the suspension notice to obtain a professional estimate of the damage (assuming he has not already done so) if he believed the damage to be in fact less than $500. Thus, in the absence of any evidence to the contrary, the DMV's finding that respondent sustained property damage in excess of $500, based on respondent's report and sworn testimony, is an uncontradicted fact.

Respondent also contended that there was insufficient evidence to support the finding that he had not established proof of financial responsibility as of the time of the accident. Respondent claimed that he was in fact a financially responsible driver within the meaning of section 16021 in that his financial resources would have enabled him to respond in damages in the event of liability.

Section 16021 provides that "[f]inancial responsibility of the driver or owner is established if the driver or owner of the vehicle involved in an accident described in Section 16000 is: [¶] (a) A self-insurer under the provisions of this division. [¶] (b) An insured or obligee under a form of insurance or bond which complies with the requirements of this division and which covers the driver for the vehicle involved in the accident. [¶] (c) The United States of America, this state, any municipality or subdivision thereof, or the lawful agent thereof. [¶] (d) A depositor in compliance with subdivision (a) of Section 16054.2. [¶] (e) In compliance with the requirements authorized by the department by any other manner which effectuates the purposes of this chapter."

Section 16021 provides an exclusive list of the authorized methods of establishing financial responsibility. It also allows the DMV to authorize

other forms of financial responsibility that serve to effectuate the purpose of the statute. (§ 16021, subd. (e).) The DMV does not presently, and did not at the time of the accident, authorize other means of establishing financial responsibility under this subdivision.[2]

■ In support of the argument that he had nevertheless been a financially responsible driver, respondent reasoned that because he would have been able to respond in damages, he had effectuated the purpose of the statute.

Respondent has misread the statute and misunderstood its purpose. The Financial Responsibility Law was enacted "as an effort to deal with the increasing number of 'financially irresponsible' drivers." (*Fahlgren* v. *Department of Motor Vehicles* (1986) 186 Cal.App.3d 930, 935 [231 Cal.Rptr. 229].) In enacting the law, the "Legislature declared that drivers . . . of automobiles in the state shall be ' "financially capable of providing monetary protection to those suffering injury to their person or property by reason of the . . . use of such vehicles" ' regardless of fault of the . . . drivers and ' "such capability shall be deemed as a concurrent responsibility of such motor vehicle . . . operation." ' " (*Ibid.*) The Legislature further mandated that drivers " 'shall evidence such financial capability *by the methods specified in this act.*' " (*Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 421-422 [135 Cal.Rptr. 537], italics added.)

The intent of the Legislature in passing the act is unambiguous. The operation of the statute is simple. Furthermore, the operation of the law is without regard to fault. Thus, where such a driver is unable to prove one of the specified forms of financial responsibility, the law mandates that the DMV *shall* suspend the driver's license. (§ 16070.)

Thus, contrary to respondent's argument below, the mere existence of personal assets does not satisfy any of the exclusive provisions of the statute. In addition, the DMV does not authorize any procedure whereby retroactive proof of personal assets may be presented to satisfy the statute.

Furthermore, contrary to respondent's understanding of the law, the mere presence of personal assets does not effectuate the purpose of the

---

[2]The DMV at one time provided for an irrevocable letter of credit under subdivision (e). However, due to the inability of the driver/owner to guarantee the availability of sufficient funds in the future, the DMV ceased authorizing the procedure.

statute. The financial responsibility law is intended to provide a guarantee that every driver will be financially responsible *before* he begins driving. Just because an individual has substantial assets today does not guarantee that they will be available tomorrow. There is no way to guarantee that such an individual's assets will not be encumbered, pledged, or otherwise unavailable to satisfy legal obligations. Thus, the evidence is likewise uncontradicted that respondent has failed to demonstrate financial responsibility as of the time of the accident as required by law.

The judgment is reversed. The matter is remanded to the trial court with direction to enter judgment denying the petition for writ of mandate. DMV is awarded its costs on appeal.

Kline, P. J., and Smith, J., concurred.